# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVIDA WHITTAKER, 5001 Marlborough Terrace, Upper Marlboro, MD, 20772, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) ) | |
| COURT SERVICES AND OFFENDER SUPERVISION AGENCY FOR THE DISTRICT OF COLUMBIA, 633 Indiana Avenue, Washington, D.C. 20004, ) ) ) ) ) ) | |
| Serve - US Attorney General's Office, Acting AG Matthew Whittaker Department of Justice 950 Pennsylvania Avenue NW Washington, D.C. 20530 ) ) ) ) ) ) ) | CASE NO.: _____ |
| Serve – U.S. Attorney for the District of Columbia, Jessie Liu, 555 4th Street NW Washington, D.C. 20004 ) ) ) ) ) | |
| and ) ) | |
| UNITED STATES OF AMERICA, ) ) | |
| Serve - US Attorney General's Office, Acting AG Matthew Whittaker Department of Justice 950 Pennsylvania Avenue NW Washington, D.C. 20530 ) ) ) ) ) ) | |
| Serve – U.S. Attorney for the District of Columbia, Jessie Liu, 555 4th Street NW Washington, D.C. 20530, ) ) ) ) ) | |
| Defendants. ) ) ) | |

1

**COMPLAINT FOR NEGLIGENCE AND OTHER TORTS RESULTING IN PERSONAL INJURIES AND MONETARY DAMAGES**

COMES NOW the Plaintiff, Davida Whittaker (hereinafter referred to as "Plaintiff" or "Ms. Whittaker"), by and through her attorney, Evan A. Parke, Esq., of Parke PLLC, and files this cause of action against the Defendants herein and states and alleges as follows:

**JURISDICTION, VENUE AND JURY TRIAL REQUEST**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, and because the Plaintiff seeks damages in excess of $75,000.00.

2. The venue is proper pursuant to 27 U.S.C. §1391(c) as a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

3. Plaintiff requests trial by jury.

**THE PARTIES**

4. Presently Plaintiff is domiciled in the State of Maryland and is a resident of Maryland at the above-captioned address. At all times pertinent to this matter, however, Ms. Whittaker was domiciled in Washington, D.C., which is where a substantial part of the events or omissions giving rise to the claim occurred.

5. Defendant Court Services and Offender Supervision Agency for the District of Columbia ("CSOSA") is a federal government agency, which operates in the District of Columbia, and whose main address is 633 Indiana Avenue, Washington, D.C. 20004; and it acts through itself and/or its respective employees, servants and or real and/or ostensible and/or apparent agents in providing its services ("CSOSA Staff").

6. As noted, Defendant CSOSA is a federal agency. It is part of Defendant United States of America. Defendant United States of America is domiciled within the jurisdiction and venue of this court, the District of Columbia.

7. As used herein in this complaint, the term "Defendants" shall mean CSOSA and the United States of America.

## COMPLIANCE WITH THE FEDERAL TORT CLAIMS ACT

8. Plaintiff realleges paragraphs 1-7.

9. This is an action by Plaintiff against the Defendants under the Federal Tort Claims Act, 28 U.S.C § 2671 and 28 U.S.C. § 1346(b)(1), for personal injuries and damages sustained by Plaintiff as described below.

10. On or about June 6, 2018, the Plaintiff submitted her Standard Form 95, supplemental demand packet and supporting documents to the address previously identify by the U.S. Department of Justice (USDOJ) for communications about this matter—the U.S. Department of Justice, Civil Division – Torts Branch, to the attention of Hope L. Swann, Paralegal Specialist, P.O. Box 888, Benjamin Franklin Station, Washington, DC 20044—as well as to the then Acting Director of CSOSA, James D. Berry, CSOSA, 633 Indiana Avenue, NW, Washington, DC 20004-2902.

11. In a letter dated July 18, 2018, Ms. Swann of the USDOJ responded to confirm that the supplemental demand packet had been received.

12. In a letter sent by certified mail dated August 2, 2018, James Touhey, Jr., Director, Torts Branch, USDOJ, indicated that Ms. Whittaker's claim was being denied.

13. Accordingly, Ms. Whittaker has standing to sue and this suit is being commenced within six months of the certified mailing of the denial letter.

## BACKGROUND

14. CSOSA is responsible for supervising offenders on probation in the District of Columbia including those who are on probation for matters handled by the Superior Court for the District of Columbia. The National Capital Revitalization and Self-Government Improvement Act of 1997 (Revitalization Act) established CSOSA to provide community supervision for adult offenders on probation, parole and supervised release in the District of Columbia.  CSOSA supervises offenders though the use of (among other things) CSOSA Staff, who implement CSOSA's policies, practices and customs in the scope of their employment.

15. CSOSA is responsible for hiring, training and supervising CSOSA Staff.

16. CSOSA endeavors to protect the safety of the public from the offenders it supervises including complaining witnesses and victims. One of CSOSA's missions is to identify risks associated with adult offenders to help ensure the protection of victims. CSOSA targets more resources to those supervised at the highest risk levels to help ensure the safety of the public and crime victims.

17. Supervising offenders and protecting victims in domestic violence cases are high priorities for CSOSA. CSOSA recognizes that defendants in domestic violence cases may be more inclined to reoffend, including against the same victims.

18. As part of the supervision process, CSOSA identifies risks posed by offenders to the public and to prior victims. CSOSA then takes actions to mitigate those risks, coordinating with law enforcement and judicial resources as needed including on an expedited basis when the safety of the public or of victims are at issue.

19. CSOSA is to hold offenders accountable for any behaviors that violate the terms of probation or supervision, or that place the public and victims at risk. CSOSA recognizes the

importance of providing information to law enforcement and judicial representatives on a timely basis to ensure that non-compliant behavior by the supervised offender, which places the public and prior victims at risk, is promptly addressed.

20. CSOSA has designed case management practices, policies and customs that are intended to protect the public and the prior victims while the offender is being supervised. These practices, policies and customs help ensure that offenders are being properly supervised based on the level of risk associated with the offender. CSOSA maintains accurate records about a supervised offender, including the location of the offender's residence, to facilitate among other things (a) home visits, and (b) the execution of arrest warrants as needed.

21. GPS monitoring is used by CSOSA for high risk offenders. CSOSA is responsible for training CSOSA Staff on how to properly supervise offenders subject to GPS monitoring.

22. CSOSA uses probation success and revocation rates as a metric in determining CSOSA's success as an organization. Consequently, there is risk that CSOSA Staff might elevate the goal of ensuring that an offender is successful on probation or supervision, on the one hand, above the goal of promptly revoking probation or supervision to protect the public (including former victims of an offender) from recidivist conduct, on the other hand.

23. Plaintiff Davida Whittaker was the complaining witness in Superior Court Case No. 2016 DVM 001387 ("First 2016 Domestic Violence Case"), a domestic violence criminal case brought by the Government against defendant Clayton Morris ("Mr. Morris"), where Mr. Morris was charged with simple assault, unlawful entry and attempted possession of a prohibited weapon stemming from an assault and other violent crimes committed by him against Ms. Whittaker. The actions by Mr. Morris caused Ms. Whittaker physical harm and were emotionally traumatizing and included, among other things, Mr. Morris holding Ms. Whittaker captive and

making threats on her life. Ms. Whittaker also was the complaining witness in another domestic violence proceeding, 2016 DVM 001529 ("Second 2016 Domestic Violence Case"), commenced against Mr. Morris while the First 2016 Domestic Violence Case was pending due to (a) Mr. Morris's failure to abide by the conditions of release in the First 2016 Domestic Violence case, and (b) Mr. Morris making additional threats against Ms. Whittaker while the First 2016 Domestic Violence Case was pending.

24. At the time the First 2016 Domestic Violence Case and Second 2016 Domestic Violence Case were pending, Mr. Morris had several prior arrests for violent conduct and a prior conviction in D.C. Superior Court, Case No. 2014 DVM 002051 ("2014 Case"), where Mr. Morris was charged with simple assault, attempted threats and attempted possession of a prohibited weapon. Ultimately Mr. Morris pled guilty to attempted possession of a prohibited weapon in the 2014 Case.

25. On or around September 29, 2016, Mr. Morris plead guilty to various charges in the First 2016 Domestic Violence Case and Second 2016 Domestic Violence Case and was sentenced to one hundred and eighty days in jail, with ninety days suspended, with two years of probation, with the sentences to run concurrently.

26. Mr. Morris's probation for the First 2016 Domestic Violence Case and Second 2016 Domestic Violence Case was to be supervised by CSOSA. On or around the time that Mr. Morris's probation began being supervised by CSOSA, on information and belief, CSOSA was aware of Mr. Morris's past alleged violent conduct including prior convictions for domestic violence-related crimes.

27. As part of the conditions of probation, Mr. Morris was ordered to stay away from and have no contact with Ms. Whittaker.

28.     In October 2016, while Mr. Morris was still incarcerated, Ms. Whittaker changed residences out of concern for her safety and on the recommendation of the victim support advocate affiliated with the U.S. Attorney's Office for the District of Columbia.

29.     After serving the incarcerated portion of his sentence, and after Mr. Morris was released from jail, on or around February 16, 2017, Mr. Morris contacted Ms. Whittaker by calling her work landline number several times. This violated the terms of his probation. Ms. Whittaker promptly informed CSOSA Staff about this transgression on the same day that Mr. Morris had called her.

30.     Specifically, on February 16, 2017, Ms. Whittaker emailed Mr. Morris's case manager at CSOSA, Daisy Diallo, stating "Great Day, I would like to speak with you in reference to Clayton Morris, he has called my job on several occasions after he was informed not to contact me" (Whittaker Email). Ms. Whittaker provided two numbers in the Whittaker Email where she could be reached: her personal cell phone and her work office number. The Whittaker Email also contained her work cell phone number in the signature block. Ms. Whittaker then spoke with CSOSA Staff and was informed that this issue—Mr. Morris improperly calling Ms. Whittaker's phone—would be addressed by CSOSA Staff during an office visit with Mr. Morris.

31.     On February 21, 2017, CSOSA held an office visit with Mr. Morris to discuss the claims by Ms. Whittaker that Mr. Morris had improperly contacted her work landline number. During that meeting, CSOSA Staff inspected Mr. Morris's phone to determine if he had contacted Ms. Whittaker. During that inspection, CSOSA Staff placed a call to Ms. Whittaker's work landline number from Mr. Morris's phone. Ms. Whittaker's work landline number had caller ID, and Ms. Whittaker saw that the call was coming from Mr. Morris's phone. After placing the call to Ms. Whittaker's work landline number, CSOSA Staff hung up the phone.

7

CSOSA Staff did not call Ms. Whittaker to let her know that CSOSA Staff (as opposed to Mr. Morris) had placed the call.

32. During the above-described office visit between CSOSA Staff and Mr. Morris on February 21, 2017, CSOSA Staff, on information and belief, showed or provided Mr. Morris with a copy of the Whittaker Email while discussing Ms. Whittaker's claims that Mr. Morris had called her. Showing or providing the email to Mr. Morris was against the practices, policies and customs of CSOSA.

33. Later on February 21, 2017, Ms. Whittaker called CSOSA to disclose that she had been contacted again by Mr. Morris. Ms. Whittaker was then informed by CSOSA Staff that it was CSOSA Staff, in particular, Daisy Diallo, who had called Ms. Whittaker from Mr. Morris's phone while CSOSA Staff was reviewing that phone, as opposed to Mr. Morris placing that call.

34. Ms. Whittaker then emailed the prosecutors who had handled the criminal cases against Mr. Morris, stating "I can not do this, the Community service officer called my job from Clayton's phone." The prosecutor responded that this is "[d]efinitely not something that is a common practice, and she is trying to rectify it (by alerting her boss, who is going to call you)." The prosecutor added "I can only imagine how frightening this must be for you…." One member of CSOSA Staff stated in an email that Ms. Whittaker was "rightfully disappointed" by the "mistake" made by CSOSA. Another member of CSOSA Staff referred to this transgression in an email as a "mistake" and an "inconvenience" and requested that Ms. Whittaker "continue to alert" CSOSA on any efforts by Mr. Morris to contact her.

35. Following the meeting between Mr. Morris and CSOSA Staff on February 21, 2017, Mr. Morris placed repeated calls to Ms. Whittaker and threatened her with great bodily harm and death. He also threatened to hurt Ms. Whittaker's child. Mr. Morris also called the

work cell phone number identified in the signature block of the Whittaker Email. Ms. Whittaker had not previously provided that number to Mr. Morris.

36. Ms. Whittaker spoke with CSOSA Staff on February 21, 2017, about the new threats being made against her by Mr. Morris. CSOSA Staff attempted to reassure Ms. Whittaker that they were protecting her. CSOSA Staff informed Ms. Whittaker that there now was an active warrant for the arrest of Mr. Morris for his behavior, and that CSOSA had attempted to have Mr. Morris come into CSOSA for an office visit on February 23, 2017.  However, on information and belief, at the time CSOSA Staff made these representations to Ms. Whittaker, the warrant was *not* active, meaning, that the police were *not* actively attempting to execute the arrest warrant as of February 21, 2017. Moreover, on information and belief, CSOSA had the wrong phone number for Mr. Morris in its system, which was interfering with CSOSA's attempt to schedule the contemplated office visit with Mr. Morris for February 23, 2017.

37. Ms. Whittaker was informed of the inaccuracies described in the preceding paragraph by CSOSA Staff during meetings held with CSOSA Staff on February 23, 2017. During those meetings, Ms. Whittaker was also informed that CSOSA Staff (specifically, Daisy Diallo) had either shown or provided a copy of the Whittaker Email to Mr. Morris during the meeting on February 21, 2017, and that it was possible that CSOSA Staff may have disclosed to Mr. Morris other information about Ms. Whittaker.

38. Later that day, Ms. Whittaker emailed a supervisor at CSOSA (James Smith) to explain that CSOSA Staff "gave [Mr. Morris] information that I sent to Attorney Mark Hobel & Michel Thomas" and "also gave him my cell phone number." During a conversation with the prosecutors that followed, Ms. Whittaker was informed that she should contact the police directly if issues with Mr. Morris arise that threaten her safety. On information and belief, a

representative of the U.S. Attorney's Office for the District of Columbia contacted the judge responsible for handling probation matters for the First 2016 Domestic Violence Case and the Second 2016 Domestic Violence Case to arrange an emergency Show Cause hearing to address this high-risk situation.

39. From the time that Ms. Whittaker first notified CSOSA Staff about the improper contact from Mr. Morris on February 16, through February 22, 2017, on information and belief, CSOSA did not complete and did not timely submit to the Court a violation report for Mr. Morris, or otherwise alert the prosecutor or the court that they believed Mr. Morris had violated his terms of probation by contacting Ms. Whittaker and making threats on her life.

40. On February 23, 2017, the police attempted to execute the arrest warrant for Mr. Morris relating to his threats on Ms. Whittaker and his impermissible contact with her. During Ms. Whittaker's meetings with CSOSA Staff on February 23, 2017, she interacted with CSOSA Staff and police officials about the attempted execution of the arrest warrant. The police had tracked Mr. Morris's GPS device to a large apartment complex where Mr. Morris purportedly resided. However, police officials—who had traveled to the apartment complex to execute the arrest warrant and take Mr. Morris into custody—were not able to serve the arrest warrant on Mr. Morris because CSOSA had failed to obtain from Mr. Morris the apartment number for where he was residing in that complex. Consequently, the police ceased attempts at executing the warrant and Mr. Morris remained at large in the community. Moreover, as of February 23, 2017, CSOSA Staff could not provide absolute confirmation that Mr. Morris was still wearing his GPS device.

41. Ms. Whittaker also was informed during the meetings with CSOSA Staff and discussions with police officials on February 23, 2017, that Mr. Morris's GPS showed that Mr. Morris had spent time near the metro stop located one block away from Ms. Whittaker's new

address in the District of Columbia. CSOSA Staff recognized that time was of the essence in arresting Mr. Morris before he made good on his threats and harmed either Ms. Whittaker or Ms. Whittaker's daughter but, again, police officials were not able to execute the warrant on Mr. Morris due to the failure of CSOSA Staff to maintain his correct apartment number.

42. During her meeting with CSOSA officials on February 23, 2017, Ms. Whittaker also had discussions with CSOSA Staff about whether Mr. Morris had received Ms. Whittaker's new address from CSOSA. CSOSA could not confirm that CSOSA had *not* disclosed her new address (or any other information) to Mr. Morris. CSOSA recommended that Ms. Whittaker move residences to protect herself.

43. On February 24, 2017, CSOSA Staff emailed Ms. Whittaker to inform her that she had now "submitted an Alleged Violations Report to Judge Nooter's Chambers and have received notice that an emergency Show of [sic] Cause Hearing has been scheduled for Thursday, March 2, 2017, at 2:30 pm regarding this high risk matter," adding "[p]lease continue to alert the police and myself in the event he calls or contacts you in any way again." A CSOSA supervisor was copied on the email and followed up that CSOSA had a "commitment" to Ms. Whittaker and thanked the CSOSA representative for "moving so quickly." The supervisor added "[p]art of our professional growth comes from making mistakes; our personal growth comes with admitting to our mistakes and doing our best to learn from them."

44. On March 3, 2017, CSOSA emailed Ms. Whittaker to inform her that Mr. Morris's probation had been revoked at the March 2, 2017, Show Cause hearing for violating his conditions of release and Mr. Morris was to serve the remainder of his sentence (90 days) in jail.

45. Because CSOSA could not affirmatively represent that CSOSA had not disclosed Ms. Whittaker's new address to Mr. Morris—or other information that might place her at risk—

Ms. Whittaker, following CSOSA's recommendation, moved to a new address, incurring additional costs and expenses.

46. The CSOSA Staff referenced above and implicated in this case were acting in the scope of employment of CSOSA. This includes the following, which were CSOSA Staff at all times pertinent to this case: Daisy Diallo, Bonnie Andrews, James Smith, Michael Johnson, Kisha Gordon, Dawn Crenshaw, and Michelle Murphy.

COUNT 1 - NEGLIGENCE

47. The foregoing allegations in paragraphs 1-46 are hereby re-alleged as though fully set forth herein.

48. At all times relevant hereto, Defendants, acting through CSOSA and/or CSOSA Staff, were involved with supervising Mr. Morris and ensuring public safety, including in relation to his former victim, Ms. Whittaker.

49. At all times relevant hereto, Defendants had a duty to act according to standards of care (including but not limited to those described in CSOSA's publicly available materials and those arising from CSOSA's customs and practices) to protect the public—including Ms. Whittaker—from Mr. Morris, who CSOSA regarded as a high-risk offender.

50. At all times relevant hereto, Defendants, acting through CSOSA and/or CSOSA Staff, breached duties owed to Ms. Whittaker and applicable standards of care when CSOSA and CSOSA Staff failed to act with the prudence that a reasonably careful person or entity would exercise under circumstances similar to those in this case.

51. The negligence of the Defendants includes, but is not limited to, the following: (a) the failure to properly supervise Mr. Morris, (b) the failure to properly provide services to Ms. Whittaker, (c) contacting Ms. Whitaker from Mr. Morris's phone and then hanging up the phone

(and not disclosing that the call had come from CSOSA Staff), (d) the failure to immediately inform law enforcement or the court that Mr. Morris violated the terms of probation, (e) the failure to immediately seek revocation of Mr. Morris's probation when he violated the terms of his probation, (f) the failure to maintain accurate records concerning Mr. Morris including the specific apartment unit where he resided, (g) the failure to protect information disclosed by Ms. Whittaker to CSOSA, and (h) on information and belief, the elevation of the goal of Mr. Morris successfully completing probation over the obligation to immediately seek to revoke probation to protect Ms. Whittaker from his recidivist conduct.

52. It was reasonably foreseeable that the negligent and enabling actions of the Defendants would result in injury to Ms. Whittaker.

53. As a direct and proximate result of the aforesaid negligence, Ms. Whittaker was injured and, inter alia, experienced pain and suffering including emotional harm and suffered other compensatory damages including expenses arising due to CSOSA's instruction in 2017 that she should relocate.

54. WHEREFORE Ms. Whittaker demands judgment for (a) compensatory and other non-punitive damages in this action in the full amount of $750,000, plus interest and costs incurred, and (b) for punitive damages in the full amount of $250,000, plus interest and costs incurred. Plaintiff also demands an award of attorney's fees.

COUNT 2 – NEGLIGENT SUPERVISION AND NEGLIGENT TRAINING

55. The foregoing allegations in paragraphs 1-54 are hereby re-alleged as though fully set forth herein.

56. At all times relevant hereto, Defendants, acting through CSOSA and/or CSOSA Staff, were involved with supervising Mr. Morris and ensuring public safety concerning Mr. Morris, including in relation to his former victim, Ms. Whittaker. Moreover, at all times relevant hereto, Defendants were responsible for (a) the training of CSOSA Staff, (b) the hiring of CSOSA Staff, and (c) the supervision of CSOSA Staff. This includes CSOSA Staff that were implicated in the matters described above.

57. At all times relevant hereto, Defendants had a duty to act according to standards of care (including but not limited to those described in CSOSA's publicly available materials and those arising from CSOSA's customs and practices) to protect the public—including Ms. Whittaker—from Mr. Morris, who CSOSA regarded as a high-risk offender, and, to this end, the hire, train, and supervise CSOSA Staff appropriately.

58. At all times relevant hereto, Defendants, acting through itself and/or CSOSA and/or CSOSA Staff, breached duties owed to Ms. Whittaker and applicable standards of care when CSOSA and CSOSA Staff failed to act with the prudence that a reasonably careful person or entity would exercise under circumstances similar to those in this case.

59. The negligence of the Defendants includes, but is not limited to, the failure to properly hire, train and supervise CSOSA Staff.

60. It was reasonably foreseeable that the negligent and enabling actions of the Defendants would result in injury to Ms. Whittaker.

61. As a direct and proximate result of the aforesaid negligence, Ms. Whittaker was injured and, inter alia, experienced pain and suffering including emotional harm and suffered other compensatory damages including expenses arising due to CSOSA's instruction in 2017 that she should relocate.

62. WHEREFORE Ms. Whittaker demands judgment for (a) compensatory and other non-punitive damages in this action in the full amount of $750,000, plus interest and costs incurred, and (b) for punitive damages in the full amount of $250,000, plus interest and costs incurred. Plaintiff also demands an award of attorney's fees.

COUNT 3 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

63. The foregoing allegations in paragraphs 1-62 are hereby re-alleged as though fully set forth herein.

64. As set forth above, Defendants owed various duties to Ms. Whittaker, breached them, and engaged in negligence.

65. It was reasonably foreseeable that Ms. Whittaker would be subjected to extreme emotional distress and harm resulting from Defendants' breaches.

66. Ms. Whittaker did, in fact, suffer extreme emotional distress and harm from Defendant's breaches including from the negligent acts undertaken by CSOSA Staff.

67. The breaches proximately caused Ms. Whittaker to experience extreme emotional distress and harm.

68. WHEREFORE Ms. Whittaker demands judgment for (a) compensatory and other non-punitive damages in this action in the full amount of $750,000, plus interest and costs incurred, and (b) for punitive damages in the full amount of $250,000, plus interest and costs incurred. Plaintiff also demands an award of attorney's fees.

## COUNT 4 – GROSS NEGLIGENCE

69. The foregoing allegations in paragraphs 1-68 are hereby re-alleged as though fully set forth herein.

70. The deviation from the ordinary standard of care by Defendant, as described above, was extreme to the point that Defendants acted in wanton, willful and reckless disregard or conscious indifference for the rights and safety of Ms. Whittaker.

71. As a direct and proximate result of the aforesaid gross negligence, Ms. Whittaker was injured and, inter alia, experienced pain and suffering including emotional harm and suffered other compensatory damages including due to the need to relocate several times.

72. WHEREFORE Ms. Whittaker demands judgment for (a) compensatory and other non-punitive damages in this action in the full amount of $750,000, plus interest and costs incurred, and (b) for punitive damages in the full amount of $250,000, plus interest and costs incurred. Plaintiff also demands an award of attorney's fees.

## COUNT 5 – VICARIOUS LIABILITY

73. Plaintiff incorporates by reference the allegations in paragraphs 1-72, above.

74. CSOSA and CSOSA Staff implicated in this matter were under the complete control of the Defendants at all times material to this incident.

75. Defendants therefore are vicariously liable for CSOSA and CSOSA Staff implicated in this matter.

76. WHEREFORE Ms. Whittaker demands judgment for (a) compensatory and other non-punitive damages in this action in the full amount of $750,000, plus interest and costs

incurred, and (b) for punitive damages in the full amount of $250,000, plus interest and costs incurred. Plaintiff also demands an award of attorney's fees.

## JURY DEMAND

Plaintiff respectfully demand a jury trial.

Date: January 28, 2019

DAVIDA WHITTAKER
By Counsel

_____
Evan Andrew Parke (DC # 490141)
Parke PLLC
300 New Jersey Ave. NW, Suite 900
Washington, DC 20001
T: (202) 316-7324
F: (202) 318-0790
evan@parkepllc.com

*Attorney for Plaintiff.*