## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVIDA WHITTAKER,<br>     Plaintiff<br><br>v.<br><br>COURT SERVICES AND OFFENDER<br>SUPERVISION AGENCY FOR THE<br>DISTRICT OF COLUMBIA, *et al.*,<br>     Defendants | Civil Action No. 19-199 (CKK) |

## MEMORANDUM OPINION
(July 29, 2019)

Plaintiff Davida Whittaker brings suit against Defendants Court Services and Offender Supervision Agency for the District of Columbia ("CSOSA") and the United States for actions related to the probation supervision of Clayton Morris. Mr. Morris had previously been convicted of charges relating to domestic violence against Plaintiff. Plaintiff brings claims against Defendants for negligence, negligent supervision and training, negligent infliction of emotional distress, gross negligence, and vicarious liability. Defendants have moved to dismiss Plaintiff's Complaint on multiple grounds. First, Defendants move to dismiss Plaintiff's Complaint on jurisdictional grounds, arguing that this Court does not have jurisdiction over Plaintiff's claims under either diversity jurisdiction or under federal question jurisdiction pursuant to the Federal Tort Claims Act ("FTCA"). Second, Defendants argue that Plaintiff's negligence-related claims should be dismissed as Plaintiff has failed to identify a duty owed to her by CSOSA. Finally, Defendants request dismissal of Plaintiff's claim for the negligent infliction of emotional distress as Plaintiff has not alleged that she was in the zone of danger.

Upon consideration of the pleadings[1], the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss. The Court concludes that diversity jurisdiction is not proper as Defendants are not citizens of a state or foreign country. The Court further concludes that CSOSA is not a proper Defendant under the FTCA and that punitive damages are precluded under the FTCA. Accordingly, the Court DISMISSES Defendant CSOSA from this lawsuit and DISMISSES Plaintiff's claims for punitive damages. The Court otherwise DENIES WITHOUT PREJUDICE Defendants' Motion. Additional factual development is required before the Court can more fully address some of Defendants' arguments.

## I. BACKGROUND

Plaintiff's claims arise out of events related to CSOSA's probation supervision of Mr. Morris. Plaintiff was the complaining witness in a 2016 domestic violence criminal case in the Superior Court of the District of Columbia brought by the government against Mr. Morris. Compl., ECF No. 1, ¶ 23. Plaintiff was also the complaining witness in a second 2016 domestic violence criminal case in D.C. Superior Court based on Mr. Morris's failure to abide by the conditions of his release in the first domestic violence case and additional threats against Plaintiff while the first case was pending. *Id.*

On September 26, 2016, Mr. Morris pled guilty to various charges from both his first and second domestic violence criminal cases. He was sentenced to 180 days in jail, with 90 days

---

[1] The Court's consideration has focused on the following documents:
- Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 10;
- Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 11; and
- Defs.' Reply to Pl.'s Opp'n to the Mot. to Dismiss ("Defs.' Reply"), ECF No. 12.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

suspended, and two years probation, with the sentences to run concurrently. *Id.* at ¶ 25. CSOSA was in charge of supervising Mr. Morris's probation and was allegedly aware of his history of domestic violence against Plaintiff. *Id.* at ¶ 26. As a condition of his probation, Mr. Morris was ordered to stay away from and have no contact with Plaintiff. *Id.* at ¶ 27.

Following Mr. Morris's release from jail, Plaintiff alleges that on February 16, 2017, Mr. Morris contacted Plaintiff by calling her work landline number several times in violation of the terms of his probation. *Id.* at ¶ 29. Plaintiff alleges that she promptly informed CSOSA of this violation. *Id.* Plaintiff states that she emailed Mr. Morris's case manager at CSOSA, explaining that Mr. Morris had contacted her. Plaintiff's email signature contained her work cell phone number. *Id.* at ¶ 30. CSOSA staff informed Plaintiff that the issue would be addressed. *Id.*

Plaintiff alleges that, on February 21, 2017, CSOSA held a visit with Mr. Morris to discuss Plaintiff's allegations. *Id.* at ¶ 31. During the meeting, CSOSA staff inspected Mr. Morris's phone to determine if he had called Plaintiff's work landline number. In inspecting the phone, Plaintiff alleges that CSOSA staff placed a call to her work landline number using Mr. Morris's phone. Plaintiff alleges that CSOSA staff quickly hung up and did not notify her that CSOSA staff, rather than Mr. Morris, had placed the call. *Id.*

Later that day, Plaintiff called CSOSA to notify them that she had again been contacted by Mr. Morris. *Id.* at ¶ 33. Plaintiff alleges that she was informed that CSOSA staff member Daisy Diallo had actually made the call. *Id.* Plaintiff contacted the prosecutors who had handled Mr. Morris's underlying criminal cases to alert them to the issues she was having with CSOSA. *Id.* at ¶ 34. Plaintiff alleges that CSOSA staff members then apologized and acknowledged their mistake. *Id.*

Additionally, during the February 21, 2017 meeting between CSOSA and Mr. Morris, Plaintiff alleges that CSOSA showed Mr. Morris a copy of Plaintiff's email, which contained her work cellphone number. *Id.* at ¶ 32. Plaintiff alleges that, following the meeting, Mr. Morris made calls to her work cellphone number, a number which she had previously not shared with him. *Id.* at ¶ 35. In these calls, Plaintiff alleges that Mr. Morris threatened her with great bodily harm and death in addition to threatening her daughter. *Id.*

Also on February 21, 2017, Plaintiff again contacted CSOSA to inform them that Mr. Morris had made new threats against her. Plaintiff alleges that CSOSA staff informed her that there was an active warrant for the arrest of Mr. Morris for this behavior. *Id.* at ¶ 36. However, Plaintiff alleges that at the time CSOSA made this assurance, the arrest warrant was not actually active. Plaintiff further alleges that CSOSA had the wrong phone number for Mr. Morris which hindered attempts to contact him. *Id.*

On February 23, 2017, Plaintiff met with CSOSA staff. *Id.* at ¶ 37. During this meeting, Plaintiff alleges that CSOSA informed her that CSOSA staff member Ms. Diallo had shown Mr. Morris a copy of Plaintiff's email and had possibly disclosed other information to Mr. Morris. *Id.* Later that day, Plaintiff alerted a supervisor at CSOSA and the prosecutors from the underlying cases about these issues. *Id.* at ¶ 38. Plaintiff alleges that, based on this information, a representative of the United States Attorney's Office for the District of Columbia contacted the judge from Mr. Morris's two criminal domestic violence cases to arrange an emergency "show cause" hearing addressing the situation. *Id.*

Also on February 23, 2017, Plaintiff alleges that police attempted to execute the arrest warrant for Mr. Morris relating to his threats to and contact with Plaintiff. *Id.* at ¶ 40. Plaintiff alleges that police were not able to serve the arrest warrant on Mr. Morris because CSOSA had

failed to obtain the apartment number where Mr. Morris resided. Lacking an apartment number, police were unable to serve Mr. Morris with the arrest warrant. *Id.*

Plaintiff further alleges that CSOSA staff were unable to provide an absolute confirmation that Mr. Morris was wearing his GPS monitor. *Id.* However, Mr. Morris's GPS data did show that he had spent time at a metro stop one block away from Plaintiff's residence. *Id.* at ¶ 41. Plaintiff contends that CSOSA staff could not confirm whether or not they had disclosed her new address or other information to Mr. Morris and recommended that Plaintiff move residences to protect herself. *Id.* at ¶ 42. Plaintiff states that she did in fact move to a new address following her conversations with CSOSA. *Id.* at ¶ 45.

The judge from Mr. Morris's two domestic violence criminal cases conducted an emergency show cause hearing on March 2, 2017 regarding Mr. Morris's threats to and contact with Plaintiff. *Id.* at ¶ 43. Following the hearing, CSOSA staff emailed Plaintiff informing her that Mr. Morris's probation had been revoked for violating the conditions of his release and that he would serve the remaining 90 days of his sentence in jail. *Id.* at ¶ 44.

Based on these events Plaintiff brings five claims against Defendants CSOSA and the United States. In Count 1, Plaintiff brings a claim of negligence; in Count 2, Plaintiff brings a claim of negligent supervision and training; in Count 3, Plaintiff brings a claim of negligent infliction of emotional distress; in Count 4, Plaintiff brings a claim of gross negligence; and in Count 5, Plaintiff brings a claim of vicarious liability.

## II. LEGAL STANDARD

### 1. 12(b)(1) Motion to Dismiss Standard

Defendants move to dismiss Plaintiff's Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. A court must dismiss a case pursuant to Rule of 12(b)(1) when it lacks

subject-matter jurisdiction. In determining whether there is jurisdiction, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)) (internal quotation marks omitted). "At the motion to dismiss stage, counseled complaints, as well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, still that "[p]laintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

## 2. 12(b)(6) Motion to Dismiss Standard

Even if the Court does have jurisdiction, Defendants argue that many of Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint

must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. JURISDICTIONAL ARGUMENTS

First, Defendants move to dismiss Plaintiff's claims on jurisdictional grounds. In her Complaint, Plaintiff states that the Court has jurisdiction over her claims pursuant to diversity jurisdiction and federal question jurisdiction under the FTCA. Defendants argue that jurisdiction pursuant to either ground is improper. For the reasons explained below, the Court concludes that jurisdiction is improper under diversity. The Court further concludes that jurisdiction is proper under the FTCA but only as to the United States.

### 1. Diversity Jurisdiction

First, the Court concludes that diversity between the parties does not provide jurisdiction to hear Plaintiff's claims. Federal courts have diversity jurisdiction if the parties are citizens of different states or a foreign country and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Defendants do not dispute that the amount in controversy exceeds $75,000. Instead, Defendants argue that diversity jurisdiction is improper because Defendants are not citizens of a state or foreign country. The Court agrees.

Courts cannot proceed under diversity jurisdiction when the defendants are the United States government or an agency thereof. As the United States Court of Appeals for the District of Columbia ("D.C. Cir.") has explained, "It is well established … that the United States is not a citizen for diversity purposes and that 'U.S. agencies cannot be sued in diversity.' *General Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 703 (7th Cir. 1991). In addition to the fact that neither the

United States nor its agencies fit any of the categories of parties listed in 28 U.S.C. § 1332(a), the Supreme Court has noted, with respect to the Interstate Commerce Commission and the Railroad Labor Board, that they 'are not citizens of any State, but have the same relation to one State as to another.' *State of Texas v. Interstate Commerce Comm'n*, 258 U.S. 158, 160 (1922) (footnote omitted)." *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 584-85 (D.C. Cir. 1993). Because the United States and CSOSA are not citizens of a state or foreign country, Plaintiff cannot rely on diversity jurisdiction to pursue her claims.

Plaintiff does not dispute that, as a general rule, the United States and its agencies cannot be sued in diversity. However, Plaintiff contends that there is a "gloss" on this general rule as explained in *Molton, Allen & Williams, Inc. v. Harris*, 436 F. Supp. 853 (D.D.C. 1997). In *Molton*, the court explained:

> [t]he historic rule is that agencies and instrumentalities of the Federal Government are citizens of no state for diversity purposes and that, therefore, because all parties on each side of a controversy must be citizens of different states for diversity jurisdiction to lie, diversity jurisdiction never lies in an action against the Federal Government or its officials in their official capacities….Recently, however, the Court of Appeals for this Circuit placed a gloss on that historic rule. In *Trans-Bay Eng'rs & Bldrs., Inc. v. Hills*, 179 U.S. App. D.C. 184, 551 F.2d 370, 376 (1976), the Circuit Court held that the Secretary of Housing and Urban Development, a defendant herein, is a citizen of the District of Columbia for diversity purposes and that diversity jurisdiction lies when a citizen of another jurisdiction sues the Secretary.

436 F. Supp. at 855. Plaintiff contends that the exception to the general rule prohibiting diversity jurisdiction should apply here because CSOSA is an agency that specifically resides in the District of Columbia and does not have a nationwide organizational focus.

The Court begins by noting that *Trans-Bay Engineers & Builders*, the D.C. Circuit case relied upon in *Molton*, was decided over four decades ago, but Plaintiff cites only one district court case applying *Trans-Bay Engineers & Builders* to find diversity jurisdiction proper. *See Mehle v. Am. Management Syst. Inc.*, 172 F. Supp. 2d 203, 205 (D.D.C. 2001) (stating that *Trans-*

*Bay Engineers & Builders* "is an anomalous, 25–year–old decision that has been strongly criticized and may no longer be good law"). Moreover, *Trans-Bay Engineers & Builders* involved a suit against the Secretary of the United States Department of Housing and Urban Development in her official capacity. 551 F.2d at 376 ("[t]his suit is against the Secretary in her official capacity…"). As such, *Trans-Bay Engineers & Builders* provides no support for bringing suit directly against the United States or an agency thereof, as opposed to against the representative of an agency. Accordingly, the Court concludes that whatever "gloss" *Trans-Bay Engineers & Builders* may have put on the general rule that the United States and its agencies cannot be sued in diversity, that "gloss" is not applicable to the facts of this case. *See Tucker v. Dep't of Army*, No. 02-5178, 2002 WL 31741510, at *1 (D.C. Cir. Dec. 6, 2002) (summarily affirming the district court's grant of dismissal because "[t]he Department of the Army is not a citizen of any state for the purposes of" diversity jurisdiction"); *Alec L. v. Jackson*, 863 F. Supp. 2d 11, 15 n.7 (D.D.C. 2012), *aff'd*, 561 F. App'x 7 (D.C. Cir. 2014) (citing *Commercial Union* for the proposition that the United States and its agencies cannot be sued in diversity). Accordingly, the Court concludes that diversity does not provide jurisdiction for the Court to hear Plaintiff's claims.[2]

### 2. Jurisdiction under the FTCA

Second, Defendants also contend that jurisdiction is improper under the FTCA, which would provide federal question jurisdiction. Defendants have three arguments as to why jurisdiction under the FTCA is improper. First, Defendants contend that CSOSA is not a proper defendant. Second, Defendants argue that judicial immunity or discretionary function immunity

---

[2] The Court notes that as Plaintiff is a resident of Maryland and CSOSA operates and is located in the District of Columbia, diversity jurisdiction may have been proper if CSOSA was a defendant that could be sued in diversity.

bars the suit. Third, Defendants assert that because there is no private analog for the claims alleged, the FTCA does not provide jurisdiction. The Court will address each argument in turn.

First, Defendants argue that CSOSA is not a proper defendant under the FTCA. Pursuant to the FTCA, this Court has jurisdiction over all "civil actions on [specified] claims *against the United States*." 28 U.S.C. § 1346(b)(1) (emphasis added). As such, "the United States is the only proper party defendant in actions brought under the FTCA." *Cureton v. U.S. Marshal Serv.*, 322 F. Supp. 2d 23, 25 and n.4 (D.D.C. 2004) (internal quotation marks omitted). Here, Plaintiff brings suit against CSOSA in addition to the United States. However, because the FTCA provides this Court with jurisdiction over only claims against the United States, CSOSA is not a proper defendant.

Plaintiff argues that CSOSA is a proper defendant pursuant to the FTCA because Plaintiff has named both CSOSA and the United States as defendants in the same lawsuit. Plaintiff cites only one out-of-circuit district court case for the proposition that the FTCA provides jurisdiction over claims against agencies as long as the United States is also a defendant. In *Fanoele v. United States*, 975 F. Supp. 1394 (D. Kan. 1997), a plaintiff brought a claim under the FTCA against the United States Marshals Service and the General Services Administration in addition to the United States. 975 F. Supp. at n.2. However, the court never addressed whether or not the United States Marshals Service and the General Services Administration were proper defendants under the FTCA. As such, *Fanoele* provides little support for Plaintiff's argument.

Based on the explicit language of the FTCA as well as the weight of caselaw, the Court concludes that CSOSA is not a proper defendant under the FTCA. The FTCA explicitly states that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable" under

the FTCA. 28 U.S.C. § 2679(a). As the D.C. Circuit has explained "[s]uits based on torts allegedly committed by the Agency or by its employees acting in an official capacity are maintainable, if at all, under the provisions of the Tort Claims Act, and must name the United States as defendant." *Goddard v. D.C. Redevelopment Land Agency*, 287 F.2d 343, 345-46 (D.C. Cir. 1961). Because the FTCA permits claims against only the United States, the Court DISMISSES Defendant CSOSA from this lawsuit. *See Verizon Wash., D.C., Inc. v. United States*, 254 F. Supp. 3d 208, 215 (D.D.C. 2017) (dismissing FTCA claims against the General Services Administration where the plaintiff brought FTCA claims against the United States in addition to the General Services Administration); *CHS Indus., LLC v. U.S. Customs and Border Protection*, 652 F. Supp. 2d 1, 2 (D.D.C. 2009) (explaining that claims brought pursuant to the FTCA could not be maintained against the defendant agencies).

Second, Defendants contend that judicial or quasi-judicial immunity bars this suit under the FTCA. Defendants claim that the United States is immune from suit pursuant to the FTCA because the United States can assert judicial immunity over Plaintiff's claims. 28 U.S.C. § 2674 ("With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim."). Defendants contend that Plaintiff's claims concern an alleged failure to properly supervise a probationer and an alleged failure to take immediate action against a probationer. Defendants explain that these actions "are integral to the role that CSOSA's employees play in the judicial process, which provides them with absolute judicial or quasi-judicial immunity." Defs.' Mot., ECF No. 10, 5. The Court disagrees and concludes that judicial immunity is not applicable to the alleged actions of CSOSA.

Judges performing acts associated with their judicial discretion and officials who perform functions closely associated with the judicial process are entitled to absolute judicial immunity. *See Butz v. Economou*, 438 U.S. 478, 511-14 (1978). As Defendants explain, probation officers are often entitled to judicial immunity from suits arising from actions that they perform for the court's benefit. *See, e.g., Khan v. Holder*, 134 F. Supp. 3d 244, 253-54 (D.D.C. 2015) (holding D.C. probation officers absolutely immune from liability for damages in claims involving alleged errors in reports provided for a parole commission appeal); *Jones v. Fulwood*, 860 F. Supp. 2d 16, 22 (D.D.C. 2012) (holding United States parole commissioners immune from suit for making a parole determination in the plaintiff's case); *Turner v. Barry*, 856 F.2d 1539, 1541 (D.C. Cir. 1988) (finding probation officers absolutely immune from challenges to the accuracy of their presentence reports). The cases cited by Defendants in support of absolute immunity relate exclusively to probation officers performing judicial or quasi-judicial functions, such as errors in reports filed with the court and official parole determinations.

When assessing a claim of absolute immunity, "the nature of the function performed, not the identity of the actor who performed it" is the Court's focus. *Forrester v. White*, 484 U.S. 219, 229 (1988). Here, Plaintiff alleges that Defendants acted improperly with respect to Mr. Morris's probation supervision, the investigation of alleged violations of his conditions of release, the disclosure of information concerning Plaintiff, the failure to seek revocation of Mr. Morris's probation, and more. At this point in the litigation, it appears to the Court that these functions are not adjudicatory in nature or otherwise intertwined with court proceedings. Instead, these functions seem to be investigatory in nature and not entitled to absolute immunity. *See, e.g., Johnson v. Williams*, 699 F. Supp. 2d 159, 167-68 (D.D.C. 2010) (finding CSOSA staff members not entitled to absolute immunity for actions relating to the plaintiff's "parole supervision, the

investigation of alleged violations of the conditions of his parole release, and the preparation of reports on which the USPC relied in issuing a parole violation warrant and revoking his parole" because those acts were investigatory, not judicial, in nature); *Ford v. Mitchell*, 890 F. Supp. 2d 24, 31-33 (D.D.C. 2012) (finding CSOSA staff not entitled to absolute immunity because the defendants' "conduct here does not constitute an adjudicative decision to grant, deny, or revoke parole[; instead] these [d]efendants only recommended that a warrant be issued for [the plaintiff's] arrest, a non-adjudicatory function"); *Swift v. California*, 384 F.3d 1184, 1191 (9th Cir. 2004) (concluding that parole agents were not entitled to absolute immunity for acts relating to the investigation of the plaintiff's alleged parole violations, the orchestration of the plaintiff's arrest, and the recommendation of parole revocation as these activities are more similar to a law enforcement, not a judicial, functions); *Scotto v. Almenas*, 143 F.3d 105, 110-13 (2d Cir. 1998) (concluding that a parole officer who recommended that a warrant be issued for a violation, but did not "prosecute" the parole revocation, was not entitled to absolute immunity).

Accordingly, the Court concludes that, because Defendants' alleged actions are primarily investigatory rather than judicial, Defendants are not entitled to absolute immunity. If, as the case develops and Plaintiff's claims become more clear, it appears that Plaintiff's claims involve Defendants' judicial or quasi-judicial functions, Defendants may again move for dismissal on this ground.

Even if absolute immunity is unavailable for Plaintiff's claims, Defendants contend that "the discretionary function exception to the waiver of sovereign immunity in the FTCA acts to bar at least some of Plaintiff's claims." Defs.' Mot., ECF No. 10, 11. The discretionary function exception applies to government actions "that are discretionary in nature" and "involve[e] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal

quotation marks omitted). Additionally, the judgment needs to be "of the kind that the discretionary function exception was designed to shield." *Id.* at 322-23 (internal quotation marks omitted). The discretionary function exception was designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, or political policy." *Id.* at 323 (internal quotation marks omitted). As such, officials are immune from suits challenging discretionary "governmental actions and decisions based on considerations of public policy." *Id.* (internal quotation marks omitted).

Defendants' argument in support of the discretionary function exception focuses on an out-of-circuit district court case, *Hardiman v. United States*, 945 F. Supp. 2d 246 (D. Mass. 2013). In *Hardiman*, the plaintiffs brought suit under the FTCA for the United States Probation Service's alleged negligence in failing to notify local police of a probationer's threat of arson and in failing to take steps to protect the area which the probationer had threatened. 945 F. Supp. 2d at 253. The court determined that the defendant was entitled to discretionary function immunity for these alleged omissions. Defendants argue that *Hardiman* is analogous to the case before the Court and that the discretionary function exception provides immunity from at least some of Plaintiff's claims.

However, besides being out-of-circuit and noncontrolling on this Court, *Hardiman* is also distinguishable. In *Hardiman*, the court concluded that determining whether or not a third-party threat existed was a discretionary function. *Id.* at 254-55. However, in this case, Plaintiff has alleged that Defendants knew that Mr. Morris posed a specific threat to her. *See* Compl., ECF No. 1, ¶ 34 (alleging that a CSOSA staff member stated that Plaintiff was "rightfully disappointed" by the "mistake" made by CSOSA); ¶ 36 (alleging that CSOSA staff "attempted to reassure [Plaintiff] that they were protecting her"); ¶ 36 (alleging that CSOSA put out a warrant

for the arrest of Mr. Morris based on his threats to Plaintiff); ¶ 41 (alleging that "CSOSA Staff recognized that time was of the essence in arresting Mr. Morris before he made good on his threats and harmed either [Plaintiff] or [her] daughter"); ¶ 42 (alleging that CSOSA recommended that she move residences to protect herself from Mr. Morris). Accordingly, Plaintiff's claims do not appear to involve negligence in CSOSA's discretionary determination of whether or not a third-party threat existed. Instead, Plaintiff alleges that Defendants had already determined that a threat existed and were negligent in managing that threat. Additionally, in *Hardiman*, the court found that the defendant's actions involved public policy determinations such as concerns about the privacy of probationers, the resources of the police, and the rehabilitative goals of the parole office. 945 F. Supp. 2d at 256-57. However, the court acknowledged that "it would be difficult to generate a plausible policy justification for failing to warn individuals who may be foreseeably impacted by events that were directly caused by the negligent conduct of the United States." *Hardiman*, 945 F. Supp. 2d 257. Here, unlike in *Hardiman*, Plaintiff has alleged that Defendants should have foreseen the harm, specific to Plaintiff, caused by their own negligence as they provided Mr. Morris with Plaintiff's work cellphone number and possibly her home address. Compl., ECF No. 1, ¶¶ 35, 42. Accordingly, *Hardiman* is not persuasive to the Court's analysis.

On the facts alleged, the Court cannot say that the discretionary function exception applies to Defendants' conduct. Plaintiff has alleged that Defendants' failure to properly address a known threat, in addition to other mistakes, violated CSOSA customs and policies which provide no room for discretion. Compl., ECF No. 1, ¶ 49. Additionally, as the D.C. Circuit has explained, the discretionary function exception applies "only where the question is not negligence but social wisdom, not due care but political practicability, not reasonableness but

economic expediency." *Cope v. Scott*, 45 F. 3d 445, 450 (D.C. Cir. 1995) (internal quotation marks omitted). And Defendants, have stated no social, political, or economic policies which are implicated by the majority of Plaintiff's claims.

Defendants do argue that, at a minimum, Plaintiff's Count 2 claim for negligent supervision and training is barred by the discretionary function exception as decisions relating to government supervision of employees generally "involv[e] the exercise of political, social, or economic judgment." *Daisley v. Riggs, Bank, N.A.*, 372 F. Supp. 2d 61, 81-82 (D.D.C. 2005) (internal quotation marks omitted). The Court agrees that issues of governmental staff supervision and training ordinarily require the weighing of policy considerations. *See, e.g., Burkart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (explaining that decisions concerning the hiring, training, and supervising of government employees are discretionary in nature, providing immunity from suit); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) (dismissing a negligent hiring claim because "[p]ermitting FTCA claims involving negligent hiring would require this court to engage in the type of judicial second-guessing that Congress intended to avoid"); *Kirchmann v. United States*, 8 F.3d 1273, 1277-78 (8th Cir. 1993) (explaining that supervision of government contractors is discretionary).

While the training and supervision of government staff may ordinarily involve policy considerations, here, Plaintiff has alleged that the training and supervision decisions were not discretionary. Instead, Plaintiff has alleged that Defendants failed to supervise and train CSOSA staff "according to standards of care (including but not limited to those described in CSOSA's publicly available materials and those arising from CSOSA's customs and practices)." Compl., ECF No. 1, ¶ 57. As such, it appears to the Court that Plaintiff has alleged that Defendants violated a mandatory, stated policy in their method of training and supervision. As Plaintiff has

alleged that the standard of care for supervising and training CSOSA staff is established, it appears that such training and supervision is not discretionary. *See Daisley*, 372 F. Supp. 2d at 82 (explaining that training and supervision claims are barred by the discretionary function exception because the plaintiff "has not indicated any statutory, regulatory, or policy directive specifically prescribing guidelines for the hiring or supervision of Treasury officials"); *see also Burkhart*, 112 F.3d at 1217 (explaining that training and supervision claims are barred by the discretionary function exception because documents showed that the transit authority has discretion in hiring and training and the parties cited no guidelines for training, hiring, or supervision). Because Plaintiff has alleged that the training and supervision of CSOSA staff is mandated by guidelines, the discretionary function exception does not apply to Plaintiff's claim for negligent supervision and training. However, if as the record develops, Plaintiff cannot provide evidence of such training and supervision guidelines, Defendants may again move for dismissal of Plaintiff's Count 2 negligent supervision and training claim on this ground.

Third, Defendants contend that jurisdiction under the FTCA is improper because there is no private analog for Plaintiff's claims. Under the FTCA, a plaintiff must state facts showing that the acts alleged are of the type that would subject "a private individual under like circumstances" to liability. 28 U.S.C. § 2674. The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA in the performance of activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 45-46 (2005) (internal quotation marks omitted). Defendants contend that, because there is no private analog under District of Columbia law which would support liability for Plaintiff's claims, "there is no basis for waiver of sovereign immunity under the FTCA." Defs.' Mot., ECF No. 10, 7. The Court disagrees.

In analyzing Defendants' argument, the Court must determine whether or not a private person can be sued under District of Columbia law for claims similar to those which Plaintiff alleges against Defendants. While Defendants are not insulated from liability merely because the acts alleged are uniquely government functions, if Plaintiff's claims are "wholly grounded on a duty created by a federal statute such that there is no local law that could support liability of a private party for similar actions, the FTCA does not apply." *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 510 (D.C. Cir. 2009) (internal quotation marks omitted). As such, the Court must take care that Plaintiff has not "merely re-labeled a violation of federal statute as common law claims." *Id.*

Plaintiff's briefing on this issue left much to be desired. Plaintiff repeatedly asserts that "[o]n its face there are private analogs here, by virtue of the fact that citizens are capable of asserting similar claims of negligence against private persons." Pl.'s Opp'n, ECF No. 11, 13. However, this conclusory assertion without more fails to assist the Court in its analysis as Plaintiff provides no examples of similar claims of negligence against private persons under District of Columbia law.

Despite the lack of support provided by Plaintiff, the Court concludes that there is a private analog for Plaintiff's claims. The most analogous cases to the situation presented by Plaintiff involve the liability of privately-owned criminal rehabilitation centers and halfway houses when individuals under their supervision cause harm to third-parties. *See Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016) (looking to liability of private criminal rehabilitation facilities to find a private analog where the plaintiff sued the government under the FTCA for negligently performing numerous duties in supervising a parolee, including failing to report parole violations). In the District of Columbia, courts "ha[ve] been reluctant to see a

defendant held liable for harm caused by the criminal act of a third party." *Workman v. United Methodist Comm. on Relief of the Gen. Bd. of Global Ministries of the United Methodist Church*, 320 F.3d 259, 262 (D.C. Cir. 2003). However, a duty to prevent harm exists in certain circumstances.

In determining whether or not a private defendant has a duty to prevent harm to third parties, District of Columbia courts have adopted Section 319 of the Restatement (Second) of Torts. *White v. United States*, 780 F.2d 97, 103 (D.C. Cir. 1986). Under the Restatement, "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Restatement (Second) of Torts, § 319. The D.C. Circuit has explained that, under this standard, "institutions, such as prisons and mental hospitals, that have custody over dangerous persons have a duty to members of the public to exercise reasonable care to control their inmates or patients." *White*, 780 F.2d at 103. Such duty to protect has been extended to privately-owned facilities which supervise convicted criminals. *See Smith v. Hope Village, Inc.*, 481 F. Supp. 2d 172, 185-87 (D.D.C. 2007) (finding that a privately-owned facility that provided transitional services and housing for those convicted of violent crimes owed a duty of care to the community). As required by the Restatement, a private facility which supervises those convicted of crimes knows or should know that those under its charge are "likely to cause bodily harm to others if not controlled." Restatement (Second) of Torts, § 319. By virtue of the foreseeability of the harm, there is a corresponding duty "to control the third person to prevent him from doing such harm." *Id.*; *see also Thomas v. City of Lights School, Inc.*, 124 F. Supp. 2d 707, 712-13 (D.D.C. 2000) (explaining that a privately-owned school for at-risk youth owed a duty to protect the third-parties when taking students on a field

trip because harm was foreseeable). Accordingly, the Court concludes that the ability of private parties to be sued in negligence for failure to prevent harm to third parties provides a private analog for Plaintiff's claims.

### 3. Summary

In summary, the Court concludes that diversity jurisdiction is not proper as Defendants are not citizens of a state or foreign country. However, the Court finds that jurisdiction under the FTCA, which presents a federal question, is proper as against the United States. As the FTCA does not provide for suits against government agencies, the Court does not have jurisdiction over claims against CSOSA. Accordingly, CSOSA is DISMISSED from this case. The Court further DISMISSES Plaintiff's claims for punitive damages as they are expressly precluded under the FTCA, Plaintiff's only source of jurisdiction for her claims. 28 U.S.C. § 2674; *Tri-State Hosp. Corp. v. United States*, 341 F.3d 571, 577 (D.C. Cir. 2003) (explaining that punitive damages are expressly precluded under the FTCA). The Court otherwise DENIES WITHOUT PREJUDICE Defendants' jurisdictional arguments for dismissal.

## IV. SUFFICINCY OF THE COMPLAINT

In addition to urging dismissal on jurisdictional grounds, Defendants also move for dismissal for failure to state a claim. Defendants move to dismiss Plaintiff's negligence-related claims based on the alleged failure to identify a duty owed to her by CSOSA. Defendants also move to dismiss Plaintiff's negligent infliction of emotional distress claim by arguing that Plaintiff failed to allege that she was in the zone of danger. The Court will address each argument in turn.

### 1. Negligence-related Claims

First, Defendants contend that the Court should dismiss Plaintiff's negligence-related

claims because Plaintiff has failed to identify a duty owed to her by CSOSA. To establish a claim of negligence under District of Columbia law, the Plaintiff must allege that 1) the defendant owed a duty of care to the plaintiff, 2) the defendant breached that duty of care, and 3) the defendant's breach proximately caused damage to the plaintiff. *Wise v. United States*, 145 F. Supp. 3d 53, 60 (D.D.C. 2015) (quoting *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008)). Defendants argue that Plaintiff has not properly alleged that CSOSA owed her a duty of care. The Court disagrees and finds that Plaintiff has made sufficient allegations concerning CSOSA's duty to survive a motion to dismiss.

Defendants cite only one case, using District of Columbia law, for the proposition that parole and probation authorities, such as CSOSA, do not owe a duty of care to the public arising from their supervision of offenders. In *Cunningham v. District of Columbia*, 584 A.2d 573 (D.C. 1990), the court found that a doctor who erroneously advised the parole board that a criminal presented no danger to the community did not violate a duty owed to the plaintiffs. 584 A.2d at 575.

However, *Cunningham* provides no analysis explaining why the parole board and the parole board advisor did not owe a duty of care. Moreover, *Cunningham* is factually distinguishable from the case before the Court. In *Cunningham*, the doctor concluded that a parolee was no longer a danger to the community. *Id.* The parolee later shot and wounded or killed several random women. *Id.* Unlike in *Cunningham*, here, Plaintiff has alleged that CSOSA was aware that Mr. Morris posed a specific danger to her based on his past assaults and continued threats. Moreover, Plaintiff alleges that she was in regular contact with CSOSA and that CSOSA was affirmatively acting in an attempt to protect Plaintiff from Mr. Morris.

Based on her allegations that CSOSA took affirmative steps in an attempt to protect her

from the specific threat posed by Mr. Morris, Plaintiff argues that CSOSA had a duty of care. Defendants admit that a duty of care exists "where a specific undertaking to protect a particular individual has occurred, and that individual has justifiably relied upon such an undertaking." Defs.' Mot., ECF No. 10, 9 n.4 (quoting *Klahr v. District of Columbia*, 576 A.2d 718, 720 (D.C. 1990)). Here, Plaintiff has alleged that there was "direct contact or continuing contact between [herself] and [CSOSA]," leading to Plaintiff's justifiable reliance on CSOSA for protection and the establishment of a special relationship and a duty of care. *Woods v. District of Columbia*, 63 A.3d 551, 553-54 (D.C. 2013). Plaintiff further alleges that her contact with CSOSA led CSOSA to take affirmative steps aimed at protecting her, such as conducting meetings with Mr. Morris, which actually worsened the situation by inadvertently providing Mr. Morris with her contact information and possibly her residence information. *See Johnson v. District of Columbia*, 580 A.2d 140, 142-43 (D.C. 1990) (explaining that an individual may rely on emergency workers not to worsen his or her condition). Plaintiff contends that CSOSA's knowledge of a specific threat directed at her and CSOSA's allegedly bungled attempts to protect Plaintiff created a duty of care.

Defendants acknowledge that "a careful factual analysis is necessary" to determine whether or not a standard of care exists. Defs.' Reply, ECF No. 12, 6. Based on the allegations in the Complaint, which the Court takes to be true, the Court concludes that Plaintiff has pled facts sufficient to overcome at motion to dismiss. As such, the Court DENIES WITHOUT PREJUDICE Defendant's motion to dismiss Plaintiff's negligence-related claims. However, the Court makes no judgment as to whether or not additional factual development will show that Defendants actually developed a duty of care to Plaintiff.

## 2. Negligent Infliction of Emotional Distress

Second, Defendants argue that the Court should dismiss Plaintiff's negligent infliction of emotional distress claim because Plaintiff has failed to state a claim for which relief may be granted. In the District of Columbia, there are two ways that a plaintiff may state a claim for the negligent infliction of emotional distress—the zone of danger rule or the special relationship rule. Under the zone of danger rule, a plaintiff must allege that: "(1) the plaintiff was in a zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for [his] own safety, and (4) the emotional distress caused was serious and verifiable." *Cornish v. D.C.*, 67 F. Supp. 3d 345, 363 (D.D.C. 2014). Under the special relationship rule, a plaintiff must allege that: "(1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Kowalevicz v. United States*, 302 F. Supp. 3d 68, 78 (D.D.C. 2018). Here, Plaintiff appears to rely on the zone of danger rule to establish her negligent infliction of emotional distress claim.

The Court concludes that Plaintiff has pled facts sufficient to allege that she was in the zone of danger. Plaintiff claims that Mr. Morris pled guilty in at least two criminal cases involving domestic violence committed against her. Compl., ECF No. 1, ¶ 25. Plaintiff further alleges that during his release, Mr. Morris placed repeated calls to her threatening her "with great bodily harm and death." *Id.* at ¶ 35. Additionally, Plaintiff claims that CSOSA could not confirm whether or not it had disclosed Plaintiff's new address to Mr. Morris and even recommended that Plaintiff move residences for her safety. *Id.* at ¶ 42. And, Plaintiff alleges that Mr. Morris's GPS

data showed that he had spent time at the metro stop one block away from her residence. *Id.* at ¶ 41. The Court finds that, at the motion to dismiss stage, these facts are sufficient to sustain a claim that Plaintiff was placed in a zone of danger due Defendants' negligence. Additional factual development is required to determine whether or not Plaintiff was actually in the zone of danger due to Defendants' alleged negligence.

Additionally, Defendants make a cursory argument that Plaintiff "proffered nothing to suggest that her alleged emotional distress was serious, and she has not presented any means to verify her alleged damages beyond her blanket statements." Defs.' Mot., ECF No. 10, 11. On a motion to dismiss, the Court must accept the allegations in Plaintiff's Complaint as true. While the Court acknowledges that Plaintiff could have been more fulsome in her pleading, the court finds Plaintiff's claim sufficient to survive a motion to dismiss. In order to meet the standard for negligent infliction of emotional distress, a plaintiff must allege "emotional distress of so acute a nature that harmful physical consequences might be not unlikely to result." *Klayman v. Judicial Watch, Inc.*, 296 F. Supp. 3d 208, 217 (D.D.C. 2018) (internal quotation marks omitted). Here, Plaintiff has alleged that Defendants' negligent acts "caused [her] to experience extreme emotional distress and harm." Compl., ECF No. 1, ¶ 67. The Court finds this allegation sufficient at this point in the litigation but notes that more will be required as the case progresses.

In summary, the Court concludes that Plaintiff has alleged facts sufficient to state a claim for the negligent infliction of emotional distress. As such, the Court DENIES WITHOUT PREJUDICE Defendants' motion to dismiss Plaintiff's claim for the negligent infliction of emotional distress. Additional factual development will be required before the Court can more closely analyze Plaintiff's claim for relief.

# V. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' [10] Motion to Dismiss. The Court GRANTS Defendants' Motion and concludes that diversity does not provide the Court with jurisdiction over Plaintiff's claims. However, the Court does have jurisdiction pursuant to the federal questions presented by the FTCA. Under the FTCA, the only proper defendant is the United States. As such, the Court DISMISSES Defendant CSOSA from this lawsuit. The Court further DISMISSES Plaintiff's claims for punitive damages as they are precluded under the FTCA. The Court otherwise DENIES WITHOUT PREJUDICE Defendants' Motion. Additional factual development is required before the Court can more fully assess some of Defendants' arguments.

An appropriate Order accompanies this Memorandum Opinion.

    /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
