# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DAVIDA WHITTAKER,
    Plaintiff

v.

UNITED STATES OF AMERICA,
    Defendant

Civil Action No. 19-199 (CKK)

**MEMORANDUM OPINION**
(July 12, 2021)

Plaintiff Davida Whittaker and Defendant United States of America participated in a settlement conference before a magistrate judge and, after failing to reach a settlement, continued to engage in negotiations. Defendant contends that in the course of these communications, the parties reached an enforceable settlement agreement that was reduced to writing, but not signed by either party. In its pending [27] Motion to Enforce the Settlement Agreement, Defendant seeks to enforce the agreement it claims was reached by the parties. Plaintiff opposes Defendant's motion, arguing that all "mediation-related" communications—including those between the parties after the formal settlement conference—are confidential and cannot be considered by the Court to determine if the parties reached an agreement.[1] Plaintiff also argues that the lack of an executed agreement undermines the existence of a binding settlement agreement.

Concluding that the record based on the parties' written pleadings alone was insufficient to determine whether the parties had reached an enforceable settlement agreement, the Court held an evidentiary hearing on April 13, 2021. The parties subsequently filed supplemental pleadings addressing the evidence and testimony presented during the hearing.

---

[1] Plaintiff contends that rules governing the confidentiality of mediation communications require that certain filings in this case be kept under seal, an issue which the Court addresses in Section II(C) of this Memorandum Opinion.

1

Based on the parties' pleadings,[2] the testimony and evidence presented during the April 13, 2021 evidentiary hearing, and the record as a whole, the Court concludes that the parties reached an enforceable settlement agreement. Accordingly, the Court shall **GRANT** Defendant's Motion to Enforce the Settlement Agreement and shall **ORDER** that this case be **DISMISSED with prejudice.**

## I. BACKGROUND

The Court has previously discussed in detail the factual allegations underlying this case in its [14] Memorandum Opinion dismissing Defendant Court Services and Offender Supervision Agency from this lawsuit and dismissing Plaintiff's claim for punitive damages under the Federal Tort Claims Act. *See* Mem. Op. at 2–5, ECF No. 14. The facts recounted here pertain to Defendant's Motion to Enforce the Settlement Agreement and are derived from the parties' written pleadings and the testimony of Defendant's counsel and Plaintiff during the April 13, 2021 evidentiary hearing.

On October 1, 2019, the parties filed a Joint Report pursuant to Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3 in which they expressed interest in participating in a

---

[2] The Court's consideration has focused on the following:
- Def.'s Mot. to Enforce Settlement Agreement ("Def.'s Mot. to Enforce"), ECF No. 27;
- Pl.'s Mot. to Seal & Opp'n to Mot. to Enforce ("Pl.'s Mot. to Seal & Opp'n to Mot. to Enforce"), ECF No. 28-1;
- Def.'s Opp'n to Pl.'s Mot. to Seal ("Def.'s Opp'n to Mot. to Seal"), ECF No. 29;
- Pl.'s Reply in Support of Sealing ("Pl.'s Reply"), ECF No. 30;
- Def.'s Reply in Support of Mot. to Enforce Settlement Agreement ("Def.'s Reply"); ECF No. 31;
- Pl.'s Suppl. Mem. on Issues Raised in Def.'s Mot. to Enforce ("Pl.'s Suppl. Mem."), ECF No. 42-1;
- Def.'s Suppl. Br. in Support of Mot. to Enforce ("Def.'s Suppl. Mem."), ECF No. 43-1;
- Pl.'s Resp. to Def.'s Suppl. Mem. ("Pl.'s Resp. to Def.'s Suppl. Mem."), ECF No. 44-1; and
- Def.'s Resp. to Pl.'s Suppl. Br. ("Def.'s Resp. to Pl.'s Suppl. Mem."), ECF No. 45-1.

settlement conference before a magistrate judge. *See* Joint Rep. at 6, ECF No. 18. Accordingly, the Court referred this case to Magistrate Judge G. Michael Harvey for a settlement conference after initial disclosures had been exchanged, but before formal discovery. *See* Order, ECF No. 19.

Magistrate Judge Harvey held a settlement conference on December 19, 2020. *See* Minute Entry (Dec. 19, 2019). In a Joint Report filed on January 9, 2020, the parties reported that they did not reach a settlement during the December 2019 settlement conference. *See* Joint Rep. ¶¶ 3–5, ECF No. 21; Transcript of April 13, 2021 Evidentiary Hearing ("Hr'g Tr.") at 10:1–13, 55:17–19. However, the parties indicated that they were "continu[ing] to engage in settlement negotiations," noting that Magistrate Judge Harvey had "made himself available to further assist the parties in mediating a resolution." *See* Joint Rep. ¶¶ 4, 5.

The question at issue here is whether the parties reached a binding and enforceable agreement during settlement negotiations after the formal mediation conference in December 2019. Defendant contends that the parties reached a settlement agreement, from which Plaintiff unilaterally reneged. Plaintiff contends that, in the absence of an executed written agreement, no binding agreement was reached.

Defendant indicates that after the parties failed to reach a settlement during the December 2019 conference, its counsel participated in teleconferences with Magistrate Judge Harvey on January 22, January 27, and February 5, 2020. Def.'s Mot. to Enforce at 2. During these teleconferences, Magistrate Judge Harvey conveyed to Defendant "Plaintiff's concerns and the terms of her settlement offer." *Id.* at 2–3; *see also* Hr'g Tr. 11:1–10. In early February, Defendant orally conveyed its settlement offer to Magistrate Judge Harvey, who requested that Defendant put the terms of its offer in writing so that it could be shared with Plaintiff. Def.'s Mot. to Enforce at

3

3; Hr'g Tr. at 11:11–12:2. Defendant provided its written offer to Magistrate Judge Harvey by email on February 6, 2020. Hr'g Tr. at 11:11–13:2.

Approximately one week later, Magistrate Judge Harvey informed Defendant's counsel by telephone that Plaintiff had accepted Defendant's settlement offer. *Id.* at 13:11–21, 14:2–14. Defendant's counsel then called Plaintiff's counsel, "confirmed that the parties had reached an agreement," and "discussed memorializing in formal language the terms of the agreement and preparing a stipulation [of dismissal]." *Id.* at 14:25–15:7.

On February 28, 2020, Defendant's counsel sent an email to Plaintiff's counsel, attaching a draft settlement agreement and stipulation of dismissal. Def.'s Mot. to Enforce at 3; Def.'s Hr'g Ex. 1 (Feb. 28, 2020 Email from R. Caplen), ECF No. 41. According to Defendant, the draft settlement agreement "set forth all the material terms of settlement that Plaintiff accepted on February 11, 2020, as well as a release." Hr'g Tr. at 16:8–17 (confirming that the "draft settlement agreement" dated February 28 included "the same terms . . . conveyed in writing to Judge Harvey on February 6th."). The draft agreement did not contain any provision requiring that it was effective only "upon signature." *Id.* at 17:5–12.

On March 2, 2020 Plaintiff's counsel sent an email to Defendant's counsel, noting that the draft provided "generally looks good," and proposing that an indemnity provision be "streamline[d]." Def.'s Hr'g Ex. 1 (Mar. 2, 2020 Email from E. Parke). Plaintiff's counsel further indicated that he was "confirming with client on the other settlement language," but "expect[ed] that [it] will be acceptable." *Id.* On March 3, Defendant's counsel asked Plaintiff's counsel to confirm that Plaintiff approved the remaining language so that Defendant's counsel could proceed with obtaining necessary internal approvals for Plaintiff's proposed revision to the indemnity provision. Def.'s Hr'g Ex. 1 (Mar. 3, 2020 Email from R. Caplen). Plaintiff's counsel responded

4

by email on March 4: "We're good here (confirmed with client this last hour). If u are good with the revision, then we can get things signed." Def.'s Hr'g Ex. 1 (Mar. 4, 2020 Email from E. Parke). During the evidentiary hearing, Plaintiff testified that her counsel's statement that she was "good" with the settlement agreement and "ready to sign the agreement if the Government was ready" was correct. Hr'g Tr. at 61:16–22.

On March 10, 2020 Defendant's counsel informed Plaintiff's counsel that Defendant had accepted Plaintiff's proposed revision to "streamline" the indemnity language and made formatting edits to the document. Def's Hr'g Ex. 1 (Mar. 10, 2021 Email from R. Caplen). Defendant's counsel sent to Plaintiff's counsel the "final versions" of the settlement agreement and stipulation of dismissal for signature. *Id.* At this point, Defendant's counsel understood this version to be "the final version" of the written settlement agreement. Hr'g Tr. at 21:7–14.

On March 11, 2020, Magistrate Judge Harvey's law clerk requested an update on the status of the case. Def.'s Hr'g Ex. 2 (Mar. 11, 2020 Email from Chambers of M.J. Harvey), ECF No. 41. Plaintiff's counsel responded, "As of yesterday we are now signature ready. My client and I are aiming to sign today. I expect the government to promptly sign when I return the papers." Def.'s Hr'g Ex. 2 (Mar. 11, 2020 Email from E. Parke). Plaintiff confirmed during the evidentiary hearing that her counsel was "correct" that as of that date, she had reviewed the agreement with her counsel and that she was "signature ready" and "aiming to sign that day." Hr'g Tr. at 62:9–14.

On March 20, 2020, Plaintiff's counsel stated in an email to Magistrate Judge Harvey's chambers and Defendant's counsel that he was "working through an issue with my client," but that it was "possible I will have the signed papers today." Def.'s Hr'g Ex. 2 (Mar. 20, 2020 Email from E. Parke). Three days later, Plaintiff's counsel reported that he "expect[s] to be in a position to forward the fully executed settlement agreement to [Defendant's counsel] tomorrow morning. I

5

will circle back then and apologize for the delay." Def.'s Hr'g Ex. 2 (Mar. 23, 2020 Email from E. Parke). Plaintiff again testified that her counsel's representation that she was prepared to sign the agreement as of March 23, 2020 was correct. Hr'g Tr. at 63:5–7.

On April 1, 2020, Plaintiff's counsel reported to Magistrate Judge Harvey's chambers and Defendant's counsel that it was "unclear whether this case will settle." Def.'s Hr'g Ex. 2 (Apr. 1, 2020 Email from E. Parke). On April 6, Plaintiff's counsel sent another email to Defendant's counsel, noting that "I don't have authority at present to reject the settlement[.]" Def.'s Hr'g Ex. 2 (Apr. 6, 2020 Email from E. Parke). Then, on April 9, Plaintiff's counsel reported by email that "[P]laintiff will not be settling, and we will not be forwarding any additional settlement language for consideration at the present time." Def.'s Hr'g Ex. 3 (Apr. 9, 2021 Email from E. Parke), ECF No. 41.

It is undisputed that neither party signed the settlement agreement. However, Plaintiff testified that she had previously agreed to the terms contained in the document provided by Defendant's counsel and intended to sign the agreement. Hr'g Tr. at 63:11–13. She testified that she changed her mind about signing the settlement agreement after a woman who "had a stay-away order, just like I did" was murdered outside Plaintiff's office. *Id.* at 63:14–20. Plaintiff agreed that this event had "caused [her] to have a change of heart about whether or not [she] would sign the agreement," and she conveyed to her attorney that she was "not signing those papers." *Id.* at 64:4–9, 19–22.

Defendant filed the present Motion to Enforce the Settlement Agreement on June 16, 2020, contending that the parties had reached a binding settlement agreement and seeking to enforce that agreement. *See generally* Def.'s Mot. to Enforce. Plaintiff opposes Defendant's motion, arguing that this Court cannot consider confidential "mediation-related" communications to determine

whether an agreement was reached. *See* Pl.'s Mot. to Seal & Opp'n to Mot. to Enforce at 15–17. Plaintiff also argues that the parties did not reach a settlement agreement because Plaintiff never signed the document provided by Defendant's counsel. *See id.* at 17–18.

In a Memorandum Opinion dated March 11, 2021, the Court concluded that the factual record was insufficient to determine whether the parties had reached a binding, enforceable agreement to resolve Plaintiff's claims in this action. Mem. Op. at 4, ECF No. 33. Accordingly, the Court scheduled an evidentiary hearing, which took place on April 13, 2021. *See id.* at 8; Minute Order (Apr. 13, 2021). At the conclusion of the hearing, the parties requested that they be permitted to file supplemental briefs. That briefing was completed on May 20, 2021.

## II. DISCUSSION

The Court finds that the Government has demonstrated by clear and convincing evidence that the parties reached an enforceable settlement agreement. Notably, Plaintiff does not dispute that she agreed to the terms of the settlement provided by Defendant to Plaintiff's counsel. Nor does she dispute that her attorney was authorized to conduct negotiations on her behalf and convey her agreement to the settlement to Defendant's counsel. Because the Court concludes that the parties reached an enforceable settlement agreement, the Court shall **GRANT** Defendant's Motion to Enforce the Settlement Agreement. The Court shall first separately address the arguments raised by Plaintiff regarding the Court's ability to consider the parties' communications in ascertaining whether they reached an enforceable settlement agreement.

**A. The Court is Not Precluded from Considering the Parties' Communications After the Settlement Conference to Determine if the Parties Reached an Enforceable Settlement Agreement.**

Before considering the parties' arguments about whether an enforceable settlement agreement was reached, the Court shall briefly address Plaintiff's argument that the Court cannot consider evidence of the parties' communications from February through April 2020, described

7

*supra* Section I, because they are "mediation-related communications" subject to confidentiality rules under the District of Columbia Code and this Court's Local Civil Rules. *See* Pl.'s Mot. to Seal & Opp'n to Mot. to Enforce at 7–11, 15–17; Pl.'s Suppl. Mem. at 1–8. The Court previously addressed this argument, concluding that the Court was "*not* preclude[d] . . . from considering the communications between the parties to determine whether the parties reached an enforceable settlement agreement." Mem. Op. at 6, ECF No. 33.

Despite the Court's earlier conclusion, Plaintiff again objects to the Court's consideration of the parties' communications, contending that "applicable mediation privilege/mediation confidentiality rules bar the consideration of the Government's evidence." Pl.'s Suppl. Mem. at 1. To be sure, confidentiality of mediation discussions is critical. *See Williams v. Johanns*, 529 F. Supp. 2d 22, 23 (D.D.C. 2008) ("Non-compliance with a confidentiality order in the context of a mediation can have a chilling effect on settlement discussions . . . [and can] make parties reluctant to engage in a frank exchange of information, perceiving that their disclosures will be subsequently used against them."). But here, the Court need not rely on any statements made during the course of any mediation session or even any substantive discussion of the terms considered by the parties to reach the conclusion that the parties entered into a binding, enforceable settlement agreement. Notably, there is no evidence on the record that the parties engaged in any discussions with Magistrate Judge Harvey regarding the substantive terms of the settlement after Defendant conveyed its offer orally and in writing on February 6, 2020 and Magistrate Judge Harvey conveyed Plaintiff's acceptance of that offer on February 11, 2020. After that date, the communications between the parties and the magistrate judge's chambers were limited to discussing "the status of finalizing" the settlement agreement—not negotiating additional or different terms. *See* Hr'g Tr. 47:17–48:1 ("[T]here wasn't any further discussion with the

mediator. There was email correspondence with Judge Harvey's law clerk regarding administrative matters, i.e. wrapping up the case after the settlement document was finalized . . . There was no substantive discussion after – I think it was February 11th.").

Although Plaintiff insists that certain provisions of the District of Columbia Code and Local Civil Rule 84[3] bar the Court from "consideration of mediation-relation evidence absent a signed agreement," Pl.'s Resp. to Def.'s Suppl. Mem. at 3, she fails to square this argument with other recent precedent in this jurisdiction in which district court judges considered the communications and conduct of parties who engaged in mediation before magistrate judges to determine whether the parties had reached an enforceable settlement agreement. For example, in *Demissie v. Starbucks Corporate Office & Headquarters*, the court recounted the general topics of discussion at each mediation session, as well as email communications exchanged between the parties following settlement conferences led by the magistrate judge to determine whether the parties had reached an enforceable settlement agreement. 118 F. Supp. 3d 29, 32–33 (D.D.C. 2015). Similarly, in *Rios v. I.S. Enterprises*, the court reviewed emails exchanged between counsel, attaching drafts of a written agreement to determine if the parties intended to be bound by an oral agreement. 113 F. Supp. 3d 283, 285 (D.D.C. 2015). The Court finds that considering the communications presently on the record does not run afoul of the mediation confidentiality objections raised by Plaintiff. Accordingly, the Court next addresses whether these communications gave rise to a binding settlement agreement.

---

[3] As the Court previously stated, "Local Civil Rule 84 applies '*only* to mediation proceedings that are formally conducted through the United States District Court's Mediation Program," which is "administered within the Office of the Circuit Executive' and which makes use of "qualified volunteer mediators." LCvR 84(b), 84.1(a), 84.4(a) (emphasis added). Here, the parties engaged in a mediation before a magistrate judge, not through the Mediation Program. Accordingly, Local Civil Rule 84 does not apply to the mediation proceedings in this case, which were conducted before a judicial officer." Mem. Op. at 5, ECF No. 33.

9

## B. The Parties Reached an Enforceable Settlement Agreement.

"It is well established that federal district courts have the authority to enforce settlement agreements entered into by the litigants in cases pending before them." *Demissie*, 118 F. Supp. 3d at 34 (quoting *Ulliman Schutte Constr., LLC v. Emerson Process Mgmt. Power & Water Sols.*, No. 20-1987, 2007 WL 1794105 at *3 (D.D.C. June 19, 2007)). "An action to enforce a settlement agreement is, at bottom, an action seeking the equitable remedy of specific performance of a contract . . . even where, as here, the opposing party disputes certain facts related to the formation of the settlement contract." *Hall v. George Wash. Univ.*, No. Civ.A. 99–1136(RMU), 2005 WL 1378761, at *3 (D.D.C. May 13, 2005) (internal citations omitted).

"Where, as here, a motion to enforce a settlement agreement is before a district court and there is a genuine dispute as to whether the parties have agreed to enter into a binding settlement, the court must hold an evidentiary hearing and provide an opportunity for cross-examination, as this Court did." *Blackstone v. Brink*, 63 F. Supp. 3d 68, 76 (D.D.C. 2014). The movant bears the burden of proving by clear and convincing evidence that the parties formed a binding agreement to resolve the disputed issues in the underlying litigation. *See id.* The "clear and convincing" standard requires evidence "sufficient to allow the court to reach a firm conviction of the truth on the evidence about which [it] is certain." *Id.*(internal citations and quotation marks omitted).

State contract law governs the enforcement of settlement agreements. *Makins v. Dist. of Columbia*, 277 F.3d 544, 547–48 (D.C. Cir. 2002). Under District of Columbia law, "a complete enforceable contract exists when there is (1) an agreement as to all the material terms; and (2) an intention of the parties to be bound." *Hood v. Dist. of Columbia*, 211 F. Supp. 2d 176, 179 (D.D.C. 2002) (citing *United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001); *Kilpatrick v. Paige*, 193 F. Supp. 2d 145, 152 (D.D.C. 2002)). The record here provides clear and convincing evidence

that the parties agreed on all material terms of an agreement to resolve Plaintiff's claims in this lawsuit and that they intended to be bound by that agreement.

1.  **Agreement to All Material Terms.**

The Court must first determine whether the parties agreed to "all the material terms" of the settlement agreement. *Hood*, 211 F. Supp. 2d at 180 ("A district court cannot summarily enforce a settlement until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement." (internal citations and quotation marks omitted)). "In the context of settlement agreements, courts have found that the amount to be paid and the claimant's release of liability are the material terms." *Blackstone*, 64 F. Supp. 3d at 77 (citing *Wise v. Riley*, 106 F. Supp. 2d 35, 29 (D.D.C. 2000)). Terms that are "not necessary for the parties to understand how they are expected to perform the contract itself" are not material. *Tauber v. Quan*, 938 A.2d 724, 730 (D.C. 2007) (citing *Duffy v. Duffy,* 881 A.2d 630, 636 (D.C. 2005)).

The uncontroverted evidence supports Defendant's argument that the parties reached an agreement as to all "material terms" of a settlement as of February 11, 2020—the date that Magistrate Judge Harvey conveyed to Defendant's counsel that Plaintiff had accepted Defendant's February 6, 2020 offer. Plaintiff's counsel also "confirm[ed] that the parties had reached an agreement" as of that date. Hr'g Tr. at 13:14–21. Under D.C. law, "[p]arties may enter into a binding agreement that is later memorialized in a written agreement." *Foretich v. Am. Broadcasting. Cos.*, 198 F.3d 270, 274 (D.C. Cir. 1999) (citing *Anchorage–Hynning & Co. v. Moringiello*, 697 F.2d 356, 363 (D.C. Cir. 1983)). Defendant's counsel testified that the same "material terms" discussed with Magistrate Judge Harvey and accepted by Plaintiff were later contained in the written agreement emailed to Plaintiff's counsel on February 28, 2020. Hr'g Tr. at 13:14–21, 14:25–16:17, 43:7–23.

After February 28, 2020, the only revisions to the written agreement included "steamlin[ing]" an indemnity provision (as proposed by Plaintiff's counsel and accepted by Defendant) and fixing typographical or formatting errors. Although Plaintiff suggests that her counsel's proposed modification to "streamline" the indemnity provision indicates that the parties negotiated "additional changes to certain terms and conditions" after February 11, 2020, *see* Pl.'s Suppl. Mem. at 10, n.2, she offers no evidence or argument that this provision is integral to the parties' understanding of how they were expected to perform under the contract.[4] *Tauber*, 938 A.2d at 730; *see also Blackstone*, 63 F. Supp. 3d at 77 ("[I]f the parties have reached an agreement as to all *material* terms, a party's misgivings about other terms 'do not constitute grounds for relieving a party of his obligations to comply' with the agreement." (quoting *Williams v. WMATA*, 537 F. Supp. 2d 220, 222 (D.D.C. 2008)). Rather, the record shows only that her counsel proposed a modification to clarify the language that Defendant's counsel had already provided.

---

[4] Plaintiff also excerpts a portion of Defense counsel's testimony in support of her argument that the parties contemplated "additional terms." Pl.'s Suppl. Mem. at 10 (citing Hr'g Tr. 39:14–18). Plaintiff selectively quotes this testimony out of context in support of her argument that Defendant's counsel knew that Plaintiff "was contemplating additional terms" to the agreement. Defendant's counsel was asked whether, "in *late March*, [he was] expecting additional terms and conditions to be proposed by Plaintiff's counsel," to which he responded (in full):

> *No. That's not true.* You [plaintiff's counsel] had sent an email indicating at one point that you were not sure whether the case would settle. You didn't have authority to reject settlement. I recall you indicating you also said you weren't sure whether additional terms might be contemplated by the Plaintiff. But *that was your email. It was long after the parties had reached an agreement*. And you had indicated that you didn't have authority to propose any new agreements, new terms, and you didn't have authority to reject the agreement that the Plaintiff had already accepted.

Hr'g Tr. at 39:9-21 (emphases added). This testimony does not stand for the proposition that Defendant's counsel knew that Plaintiff was "contemplating additional terms" at the time she agreed to the settlement in February. It was only *after* Plaintiff reneged on the agreement that Plaintiff's counsel conveyed that she might be considering additional terms. *Id.*

The material terms of the parties' agreement are readily ascertainable from the written agreement sent by email to Plaintiff's counsel on March 10, 2020. *See* Def.'s Hr'g Ex. 1 (Mar. 10 Email from R. Caplen). Pursuant to the undisputed evidence on the record, this document contained the material terms included in the Government's February 6 offer that was conveyed to Plaintiff by Magistrate Judge Harvey, and which Plaintiff accepted as of February 11, as confirmed by her counsel. Moreover, it is undisputed that Plaintiff *agreed* to the terms contained in that document. She testified that her counsel's representation in a March 3, 2020 email that she was "good" with the settlement agreement was "correct." Hr'g Tr. at 61:16–22. The Court concludes that Defendant has demonstrated by clear and convincing evidence that the parties agreed on the material terms of the settlement; those terms were accepted by the Plaintiff as of February 11, 2020 memorialized in writing, including in a "final version" of the writing provided to Plaintiff's counsel on March 10, 2020, and confirmed by Plaintiff's counsel as being "signature ready." *See* Hr'g Ex. 1 (Mar. 10, 2020 Email from R. Caplen); Hr'g Ex. 2 (Mar. 11, 2020 Email from E. Parke).

**2. Intention to Be Bound.**

The Court also finds that clear and convincing evidence establishes that the parties intended to be bound by the terms of the settlement offer accepted by Plaintiff as of February 11, 2020. "The intentions of parties to a contract must be determined not only from the terms of the written agreement but also from the actions of the parties in relation thereto." *Bergman v. Parker*, 216 A.2d 581, 583 (D.C. 1966). "[R]egardless of the parties' actual, subjective intentions, the ultimate issue is whether . . . they *objectively* manifested a mutual intent to be bound contractually." *Dyer v. Bilaal*, 983 A.2d 349, 357 (D.C. 2009) (quoting *1836 S Street Tenants Ass'n, Inc. v. Estate of B. Battle*, 965 A.2d 832, 837 (D.C. 2009)). Although "[m]utual assent to a contract, often referred to as a 'meeting of the minds' is most clearly evidence by the terms of a signed written agreement,"

13

a signed writing is "not essential to the formation of a contract." *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995); *see also Makins*, 277 F.3d at 547 ("[N]ot all contracts, and not all settlements, must be written in order to be enforceable. The parties may orally agree upon the material terms and intended to be bound."). Here, the communications of the parties plainly show that they intended to be bound by the terms of the offer accepted by Plaintiff as of February 11, 2020. *See, e.g.*, *Dyer*, 983 A.2d at 357 (concluding from parties' email communications that they intended to be bound by settlement terms).

Although the Court noted in its Memorandum Opinion pre-dating the evidentiary hearing that it was unclear from the record whether Plaintiff's counsel had the necessary authority to bind her to a settlement, Plaintiff testified during the evidentiary hearing that her counsel has represented her throughout this case and that he was authorized to negotiate a settlement on her behalf, and that she never told her counsel that he was not authorized to negotiate a settlement on her behalf. Hr'g Tr. at 53:20–54:1, 64:23–65:8. Based on this testimony, the Court finds that Plaintiff's counsel had actual authority to "bind plaintiff to the settlement." *Hodges v. Potter*, Civil Action No. 98-1614 (RWR), 2005 WL 6336682, at *1 (D.D.C. Aug. 31, 2005) (citing *Hall*, 2005 WL 1378761, at *5).

Plaintiff's counsel communicated to Defendant's counsel that Plaintiff accepted the settlement offer conveyed to Magistrate Judge Harvey on February 6, that she was "good" with the settlement language contained in the formal agreement circulated on February 28, and that she was prepared to sign the document. Notably, Plaintiff confirmed that her counsel's representations in these communications were accurate—that she had reviewed the papers provided by Defendant's counsel with her attorney, she was "good" with the language contained therein, and that she had "agreed to sign it." Hr'g Tr. 60:17–63:13. The Court finds that these communications

14

made by Plaintiff's counsel—affirmed as correct by Plaintiff—demonstrate that Plaintiff intended to be bound by the terms of the agreement contained in the written document.

Plaintiff, however, argues that the lack of an executed document undermines a finding that she intended to be bound by the agreement. Specifically, she contends that the signature blocks and certain clauses contained in the written agreement demonstrate that "settlement-related actions" were conditioned on "*the execution* of the agreement." Pl.'s Suppl. Mem. at 10 (emphasis in original). But the clauses of the agreement cited in her supplemental brief do not condition agreement to *the settlement* on the execution of the document. Rather, they required only that (1) those who sign the agreement have the authority to do so; and (2) that the parties agreed to dismiss this lawsuit and file a stipulation of dismissal once the agreement was executed. *See id.* at 11. None of these clauses—or the presence of signature blocks—conditions the parties' *agreement* to the terms of the settlement on the signature of the document.

Plaintiff also argues that the failure of Defense counsel to notify this Court that a settlement agreement had been reached undermines a finding that the parties intended to be bound. *See, e.g.*, Pl.'s Suppl. Mem. at 9. Although the Court previously noted that it would "take this fact into consideration," it also indicated that "it does not find it alone persuasive that no agreement was reached." Mem. Op. at 7–8 n.5, ECF No. 33. In light of other evidence and testimony, the Court remains unpersuaded that the failure to notify this Court of a settlement demonstrates that the parties did not intend to be bound by their agreement. Notably, Plaintiff's counsel communicated to Defendant's counsel and Magistrate Judge's Harvey's chambers repeatedly that his client had agreed to the settlement terms offered by Defendant. *See, e.g.*, Hr'g Tr. at 13:14–21, 14:25–15:4; Def.'s Hr'g Ex. 1 (Mar. 4, 2020 Email from E. Parke) ("We're good here (confirmed with client this last hour). If u are good with the revision, then we can get things signed."); Def.'s Hr'g Ex. 2

(Mar. 11, 2020 Email from E. Parke) ("As of yesterday afternoon we are signature ready. My client and I are aiming to sign today."); Def.'s Hr'g Ex. 2 (March 23, 2020 Email from E. Parke) ("I expect to be in a position to forward the fully executed settlement agreement to [Defendant's counsel] tomorrow morning."). And Plaintiff herself testified that she had reviewed the terms of the agreement and agreed to sign the papers. *See* Hr'g Tr. at 61:10–63:7.

Although Plaintiff explained that extenuating events caused her to have a "change of heart" about her agreement to settle this case, *id.* at 64:19–22, "misgivings . . . do not constitute grounds for relieving a party of [her] obligations to comply with the terms of an agreement which [s]he entered." *Williams*, 537 F. Supp. 2d at 222; *see also Ulliman*, 2007 WL 1794105, at *7 ("A party cannot avoid the effects of a valid oral settlement agreement because of second thoughts[.]"); *Greene v. Rumsfeld*, 266 F. Supp. 2d 125, 137 (D.D.C. 2003) (a "change of heart" of a party to a settlement agreement is not a basis upon which to relieve the party of his obligations under the terms of the agreement).

### C. The Court Shall Require the Parties to Address the Need to Maintain Certain Filings Under Seal.

The Court previously ordered that filings containing communications between the parties be filed under seal "pending the Court's resolution of Defendant's Motion to Enforce the Settlement Agreement because the Court ha[d] not yet determined whether mediation was ongoing at the time of these communications, or whether an agreement had already been reached." Mem. Op. at 6, ECF No. 33. The parties also agreed at the conclusion of the evidentiary hearing that they would file the exhibits introduced at the hearing, and their supplemental briefs under seal pending the Court's resolution of Defendant's motion. *See* Hr'g Tr. at 67:18–68:5, 76:15–9.

The Court noted, however, "[i]n the event the Court determines that the parties did reach an enforceable agreement prior to these communications, the Court may reconsider" the need to

maintain the pleadings under seal. Mem. Op. at 6 n.3, ECF No. 33. The communications upon which the Court relies in this Memorandum Opinion to reach its conclusion that the parties entered into an enforceable settlement agreement do not address the content of that agreement. Accordingly, the Court shall not require that this Memorandum Opinion be filed under seal. Based upon the Court's conclusion that the communications on the record do not address the content of the parties' mediation discussions, but rather address formalizing the final document and completing other administrative matters, the Court is also inclined to order that the following materials be unsealed:

- Defendant's Motion to Enforce the Settlement Agreement, ECF. No. 27;
- Plaintiff's Opposition to Motion to Enforce, ECF No. 28-1;
- Plaintiff's Reply in Support of Sealing, ECF No. 30;
- Hearing Exhibits, ECF No. 41 (with the exception of the Settlement Agreement attached to Exhibit 1);
- Plaintiff's Supplemental Memorandum, ECF No. 42-1;
- Defendant's Supplemental Brief, ECF No. 43-1;
- Plaintiff's Responses to the Government's Supplemental Brief, ECF No. 44-1; and
- Defendant's Response to Plaintiff's Supplemental Brief, ECF No. 45-1.

The Court shall require the parties to file by **no later than July 19, 2021** any objections to unsealing the above-listed materials, with appropriate citations to legal authority.

### III. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Defendant's Motion to Enforce the Settlement Agreement and shall **DISMISS** this action with prejudice in accordance with the terms of the settlement agreement enforced herein. The Court shall further **ORDER** the parties to file by no later than **JULY 19, 2021** any objections to the Court's proposal to unseal the materials listed in Section II(C). An appropriate Order accompanies this Memorandum Opinion.

**Dated:** July 12, 2021

                                        /s/
                                COLLEEN KOLLAR-KOTELLY
                                United States District Judge